Good morning, Your Honor. I misheard the calling of the case. I thought you said Loomis. Oh, sorry. Morning, Mr. Blank. I'm Paul Lynch. I'm the attorney for the appellant. Am I allowed to ask who my brother counsel is here? I don't recognize the gentleman. I've never met him before. As I believe the court knows, we're here this morning on an appeal, which would appear in the face of it to be extremely simple in terms of the single point that appears to be being appealed. When, in fact, I am challenging the rule of law that was handed to the United States District Court judge by a decision of an earlier panel of the Ninth Circuit. What can – what do you suggest is available to us to do about that? Because in the normal event, a prior decision of this Court in the same case is law of the case and would tie our hands. Well, Your Honor, I did take a look at that. The nature of this particular appeal and the problem is such that with no cases cited and nothing done by the earlier panel, I had to sort of go afield. I did bump into some authority, which I put in the brief, to the effect that that was a determination made on a motion and that a motion – a determination by a panel deciding a motion can be overruled by a review panel. So what we have is a decision of the United States District Court judge, which I will flat out state is erroneous, that we appealed in the first instance. We briefed it. We went upstairs, and at the last minute, somebody threw in a motion with an affidavit attached to it. And four months later, the Court decided they would not look at the merits. They did not have enough to determine the motion, so they denied it but fashioned a rule out of what I call whole cloth, sent it back downstairs and instructed the U.S. District Court to hold an evidentiary hearing on the assumption that the rule was correct and with no opportunity other than my motion for reconsideration to attempt to do anything about that. The U.S. District Court judge pointed out that he – Do I understand your argument? You disagree with the prior panel's ruling and with the nature of the remand? I disagree with the prior panel's ruling violently, Your Honor. I understand that. Okay. What was the purpose of the remand? The purpose of the remand was for the United States District Court judge to hold an evidentiary hearing. Which he did. Which he did, to determine if the appellant, the original Petitioner, had become a permanent resident of the State of Hawaii. And took evidence on that and concluded that she had. Took evidence on that, concluded that she had. Why isn't our review limited to the correctness of that determination? Because there has been no – I don't believe that my first opportunity to appeal an erroneous rule of law is to the United States Supreme Court. I could not have done so before because there was no determination made. It was just an announcement of a rule, a remand to the U.S. District Court. District Court felt bound by the rule. It was the room within which, if you will, that he conducted all his proceedings. It was an hour and 45-minute hearing. And he determined that she was a permanent resident of the State of Hawaii, quote, for purposes of the Hague Convention, close quote. And, therefore, he was constrained by the rule given him to declare that the case was moot, and he vacated his earlier decision, and so there's no case. So do you agree that unless we have the authority to revisit the prior panel's decision that we're bound to look simply at the conclusion of that hearing and determine that it would be appropriate? Your Honor, I have, if you state it that way, I have no choice but to say, yeah, I have to agree if you assume that premise. And then the question becomes one for me. When do I get to challenge a rule that I think is ridiculous, you know, and I don't unless they appeal to the Supreme Court, and I suppose what I'm going to get if they were willing to entertain it would be, no, you already had your chance downstairs on a motion for reconsideration on a ruling that wasn't even anticipated, wasn't brief, wasn't part of the case. I don't believe that that's the state of our jurisprudence. So, I mean, let's go. Mr. Lynch, let me ask you just because I'm sure you've thought about it a lot. The argument that occurs to me in support of the prior panel's decision is that the Hague Convention is intended to protect people from a situation where a child is, in effect, snatched from one country and taken to another country. And under the umbrella of the Hague Convention, you then say, you know, time out. The country of the child's habitual residence is the one with the choice of law that controls and whatever. And I'm thinking that the prior panel possibly thought if at the time the decision is made, there's no longer a fight between two countries, but only a fight within one nation, that is now the State of Hawaii, that the real purpose of the Hague Convention is mooted. What is your analysis of that argument? Okay. Understanding that my analysis is exactly that, that this particular treaty was adopted by the United States in 1988, and, therefore, it's now 60 years old in terms of the federal legislation, the ICARA, International Child Abduction Remedies Act. And that this was only the second decision, I believe, of the Ninth Circuit. That is my case now. That there have been many more decisions in other circuits, and the law is somewhat, but not yet fully developed. But for purposes of what we're talking about right now, Your Honor, it is fully developed. Basically, it's very simple. The treaty and the law implementing it stands for only one thing, and that is thou shalt try the trial custody proceeding if there is to be one in the place of the children's habitual residence, period. The wrongful act that is attacked as the symptom to the thing that has to be fixed is the habitual residence. The only reason that we're even here is because the United States District Court judge made what I consider to be an erroneous decision in the first instance. This would all be over with. In addition, for a panel of the Ninth Circuit to declare a rule of law based on mootness when there isn't anything moot about this at all, you know, I could go into Becquier versus Becquier or any other case that gives you all the factors about mootness. They just aren't present. And then to say that you have subject matter jurisdiction, which you now lose after the fact, you had it when you started, but you lose after the fact, and that makes it moot, is a brand-new one and, frankly, not worthy of this Court. And so the authority that I cited in terms of whether this panel has the authority to overrule the earlier panel's decision, there are two or three elements to it, as I recall. It's in the brief, manifest injustice, motions panel being overridden by a merits panel, because this right now, this is the last stop for this case. There's been a wholly brief case that has never even been looked at. There's a Rule 60B motion that's never been heard. I would refer the case just by analog, not directly on point to anything in this case, the Friedrich v. Friedrich case in the Sixth Circuit or the Eighth Circuit, I forget. There are three or four decisions where that thing went up and down, and they developed the law as a result of it, and the total time involved was something in the order of four to six years. So I think it is the legal fiction or the fact that we're talking about what's right. As of the time the petition of the event initiated by the abductor, the petition is filed because the convention does say that at the time the petition is filed, the petitioner and the respondent have to be from in different countries. And after that, on comes the remedy. Now, you can get into argument about whether it was properly employed and this, that and the other. That's not what we're here for today. That's what I have never been allowed to get into except the oral argument two years ago. The decision of the earlier panel, if upheld by this panel, kills the purpose, the underlying goal, purpose, rationale and reason for the Hague Convention. It's frozen out the window. Mr. Lynch, let's suppose that Ms. Gowden had been a citizen of the United States but living in Canada for an extended period of time. Would the Hague Convention have applied then? Because the habitual residence of the children would have been Canada. I believe so. My recollection of the limited amount that's been written on that is if it's the place of habitual residence, it doesn't depend upon the citizenship. Okay. Well, let's suppose that at the time that she filed the suit that was true. And then let's suppose that she moved to Florida. And where, suppose that she had been raised in Florida. She returns to the family homestead. She's a citizen of the United States. She's now living in Florida. After the time that the suit is filed, isn't it reasonable for the court to say, wait a minute, there's no Hague Convention left here. The habitual residence of the kids has been moved from one country back to the United States. And that could be handled under our ordinary rules for child custody matters without involving the Hague Convention. Your Honor, I have to check one fact. I'm not sure I heard it accurately. She moved on to Florida after the filing of the petition. After the filing of the petition. It doesn't make any difference. It doesn't make any difference. I will turn it around and say, why wouldn't that make sense? And I will turn it around and I'll say, where in the statute, where in the treaty, where in American jurisprudence does the court get to import that without there being any reason for it, there being no mention of it? I mean, I put some authority in about trebly created rights and remedies. I mean, I felt like I was wandering all around American jurisprudence trying to put something together. But frankly, it makes sense. There's one wrong and only one wrong in this situation. One reason and only one reason that the Hague Convention came into being. The treaty was signed and we have implementing legislation. And that is we will no longer allow forum shopping. We will no longer allow wrongdoing. We will no longer have it be other than that. The settled law of all signatories to the convention is that if you want to go have custody of your children, you may. But you must do it in the place where they habitually reside at the time that you want to do it. Once that's initiated. OK. In this particular instance, she came over to Hawaii because she wasn't working. She hadn't been working for six years. She came over to Hawaii because the only thing she had was her children. OK. So is that a voluntary coming? I mean, Judge King said, let me just address this one point before I forget it. Because although I don't believe this case should go off on whether the judge was right in finding permanent residence on behalf of my client, I do have to make the argument. In other words, I don't think that belongs in here at all. But I don't think I think the judge abused his discretion, even if it did. OK. Because he found all the panoply. We stipulated to the fact that, yes, indeed, she lives. You know, she sleeps at a house in Kailua, Hawaii. Yes, indeed. She has a real estate license in the state of Hawaii. She had one for 20 years before. Is she illegally holding that license now? Is she illegally working in light of her immigration status? Number one, she's not working in the real estate trade. But based on what I submitted as a supplemental of a letter brief, which is news to me, have you said that I would have to say probably if she was working. But you see, I don't want to get into why she's working, not working this down here. The panoply of characteristics or incidents looked at to determine whether she's a permanent resident. They're all there, but they're no more or less than they would be for anybody who moved somewhere and was going to stay there for a period of time. The question is, what's her intention and what's going to happen? The court mentioned at the tail end of its last decision, the panel that passed this rule. The court said, if I can find it, on the last page, Gordon suggested that she had oral argument. Gordon suggested that she may have moved to Hawaii for the sole purpose of regaining custody of the children to return to Canada. As an appellate court, we are ill-equipped to resolve this factual dispute. Judge King didn't even approach that question. It obviously seemed to be of some import to the panel that wrote the decision. And that's what the uncontradicted testimony in this hearing is. Mr. Lynch, let's suppose that we felt bound by the position, by the prior position of the panel. And the panel said, didn't say permanent residence. You've used the term permanent residency several times. That's not what the panel said. Twice says in that final paragraph whether she permanently moved to Hawaii. Now, assuming that we believe that we are bound by that decision or that we believe that that decision was correct and therefore ought not to be disturbed, on remand to Judge King, what rule of law should Judge King have applied? He applied the rule of domicile, which is one that we – that is familiar to us because it's used in diversity jurisdiction. It's a familiar rule, one that district courts understand sort of what the – what the limits are. Was that the right rule for Judge King to have applied? And if not, what rule should he have adopted? Well, it wasn't the right rule to apply for two reasons. First, I've already stated it. I don't think that this should be used.  I'm assuming that went away. Okay. The second one is it seems to me that if you are going to say that you are going to deprive somebody of a right that they acquired because of the wrongdoing of the other party, okay, A, you don't do anything to support the wrongdoing. As a matter of public policy, you absolutely do not do anything or have rules of law that support the wrongdoing. Put that to one side. So then that would mean to me that if you wanted to look at deprivation of a right because you actually made a move and you avail yourself of the – of the something, something in the other country because, as I've already acknowledged, she's living there. I think my question is very specific. Let me rephrase it. When our court said that we remand to Judge King for the purposes of determining whether Ms. Gowden has permanently moved to Hawaii, when we use that phrase, permanently moved and used it twice, what rule of law, principles of fact, should Judge King have applied? He used the rule of domicile. Was that an appropriate rule of law for him to apply? A typical rule of domicile is two things. One, you must be physically present with the intent to remain. Now, you may challenge – you may challenge his conclusions on those facts, but I'm wondering whether we got the law right in the first instance. Well, I mean, I saw that question in the order leading up to the letter brief, and I have put a fair amount of thought into it, and the only thing that I come up with is what I said about not supporting the wrongdoing of the wrong door, so it seems to me I'd like to know what permanent means for purposes of the Hague Convention. Well, that's what I'm asking. Well, I'm saying that hasn't been defined, but if you're asking me what it should be, I've already given an indication that you should not pass any rule which in any way endorses the wrongdoing of anybody, and therefore permanency has to be voluntary, non-coercive, not related to the act of the wrongdoing and doing the wrongdoing, and proven by clear and convincing evidence by the person asserting that there was a permanent move. Now, I somewhat made that up. I'm not sure if I went and researched. I could probably find some analogies to make it stand, but it seems to me it has to be something like that, or otherwise the Hague Convention is a waste of time, and this is too big a country to be doing that to people who have passed that kind of a law. I'd like to save a little time if I might. Surely. Mr. Espinoza. Espinoza. Good morning to the panel. By the way, I noticed in the record that your letter to the clerk saying that you would be appearing, you copied your client but not your opponent, which is probably why you didn't know who you were. That's definitely correct. I did it with Mr. Remus in Hawaii, and I guess we ---- Okay. So I apologize to Mr. Lynch and the Court for that. In any respect, Edmundo Espinoza, being on behalf of responding, I'll leave. And if I may read, obviously this Court is quite aware of the prior decision, and the Court said at that time, we need not resolve the broad question of whether or under what circumstances a child should be returned to a petitioner's new post-abduction residence. This case presents unusual circumstances. Godard moved to the same country in which Remus and the children are now found. The convention cannot be invoked when the petitioner moves permanently to the same country in which the abductor and the children are located. Didn't she say by way of affidavit that the only reason she was in Hawaii was to try to get her kids back? That's my understanding from reviewing all the documents. What's wrong with that? Intent. How does that even factor into the equation? I don't think intent has anything to do with it. I think that this matter was returned to Judge King, you know, for an evidentiary hearing. Well, I know, but we have the option if, A, because it was a motions panel decision on jurisdiction, which always goes to the merits panel, and, B, on just normal law of the case analysis of saying that it's just wacky. So I'm asking you why the decision before wasn't so wacky that we should feel inhibited from revisiting it. So put another way. If somebody moves to the country where their child has been abducted to, why should that factor in to the liveliness of the controversy under the Hague Convention? Let me see if I can understand the court's first question, see if I can formulate it myself. In this case, the convention basically says that it applies to countries, but it has to be two countries. In this case, it was the United States and then Canada. She was at the time, no question about it. He, Mr. Remus, in quote, abducted the children, brought them to Hawaii, and then the proceedings began. The problem is that the convention doesn't mention anything about, and it is quite clear in the prior opinion, about should the convention apply if the individual now moved permanently to the country? Well, why shouldn't it? Because that doesn't have anything to do on the merits. It may have a lot to do with it. That is, where is the habitual residence that the child should be returned to? But here's the problem I've got with your concept. What why does the Hague Convention mean to prohibit a mother or a father, that is, the other parent, from going where the child is either for emotional reasons or financial reasons, psychological reasons, supportiveness reasons? And if that parent does that, then the Hague Convention is suddenly cratered? Is that the concept? That's what I read. That's what I read from the court. Okay. And where do you read that from? Where do we go to see that reading supported? Basically what I quoted to this Court, this is from the prior panel, obviously. Well, I know. But where else besides the prior panel, which seems to be fairly unique in the view that you can undo the Hague Convention once a jurisdiction attaches? I believe that the real reason behind all this is why apply the convention. At least like Your Honor was saying, the convention is to apply when both countries are at stake, not when the individual is either filing and then moves to Florida. In this case, she moved to Hawaii. That is, it defeats the purpose of the convention treaty. She said she came to Hawaii to maintain contact with her children and to engage in this litigation and defend it and try to get her kids back. And she said that she'll go back to Canada as soon as the litigation is over. That is correct. I'm not arguing that that's what she's saying. What I'm saying is she's saying just because I say my intent is to return, when? When? Three years, four years, umpteenth? However long. She doesn't want to lose contact with her kids. She doesn't want her kids to think that she's abandoned them, that she wants to be there during these proceedings, and she has to stay alive so she makes a living. She has not even talked to the children, Your Honor. That's a different issue. That's a different issue also. All right. But then, at least collaterally, I wanted to say that. At the same time, she is the poster child of somebody who moves permanently to a location, only because she does a myriad of things, and they're quite outlined by Judge King. Okay. Let me start with one thing before we start that, because I'd very much like for you to continue that, but I do want to ask the question I asked Mr. Lynch. Did Judge King use the right rule of law here? Is domicile the appropriate rule of law? Because then once you get to the facts, I want to be able to have something to measure that against. And I understand the Court asked that before. Judge King, in his decision, is quite unclear, because he says on page 5, it is not clear as a matter of law that this Court must apply a domicile test in determining whether the petitioner is moved permanently to Hawaii. But you may tell us whether you think Judge King got it right or whether you think there's a different rule that we should be applying here. Well, this Court, you yourself mentioned, as far as it is not a matter of residence, it's a matter of whether the person moved, moved permanently. We're not talking about residence. In this case, I believe that Judge King said, well, they have stipulated using the test of domicile. I'm not too clear on that, so I'm going to decide this factually. That's how I read his decision. He said, I'm not too clear whether this Court must apply the domicile test. So he avoids it, and then he says, I'm going to make a factual finding, which he did. No question about it. Now, what is the test? I assume that the parties stipulated because they were stipulating to certain guidelines. And the guidelines, as the appellees quote, on domicile, they're sort of synonymous with residence. Even on the immigration law, and there's a quote there, what residence means, and, of course, means the place of general abode. The place of general abode of a person means its principal actual dwelling place. In fact, the question we were dealing with was whether the children were entitled to resident tuition at the University of Hawaii, and the same facts were presented only on cross-examination. She admitted that really the only reason she was in Hawaii was to watch her children participate in intercollegiate sports, and as soon as their 4 years was up in Hawaii, she intended to return to Canada. What would be the appropriate outcome? Let me see if I can understand the question. Is the Court saying what would be the effect if the children would be attending some of the courses? Imagine hypothetically that instead of the Hague Convention, we're dealing with whether these kids pay $1,000 a semester or $10,000 a semester as nonresidents, and you have the same factual record, including her statement that the only reason she's there is because her kids are at the University of Hawaii and she wants to see them participate in intercollegiate sports and she's going to return to Canada immediately when they cease participating or graduate. To me, it would be an additional factor that would militate against her. Would you say in that circumstance she wasn't a permanent resident? That she was. Well, you say she was. Yes. Even though she was just there to watch her kids play sports. Yes. On that, of course, on that hypothetical, I'm not isolating that matter. Let me retract that. On that specific, she is there in Hawaii because the kids who were born or whatever in Hawaii, they're having the benefit of, and she moves to Hawaii just because of that. Just because of that, and she's going to be visiting and only that factor. Well, I will retract that. I don't think that she would be classified as having permanently relocated to Hawaii. In this case, obviously, it's a little bit the opposite because Judge King cited I don't know how many. And that's why I said if anybody is opposed to your child, I think that the lady is. No question about it. But again, the purpose of the convention is because the two countries, sometimes they cannot go over to that country to litigate. It just happens maybe. Let me ask you a question. I've forgotten the name of the case, unfortunately. But it probably will ring a bell with you when I describe what I remember of it, which is that the father or husband was in the armed services stationed in Germany, and the family went to Germany having lots of problems. The wife and the child come back to this country, I believe to Washington, on a vacation and decide to stay. So in effect, the kids have been removed from Germany on the Air Force Base or whatever to the State of Washington. And the husband, father, comes back over. He's an American citizen. No question about that. No question he's a permanent resident. He's a lawful citizen. He's the whole bit of the United States. He just happens to be on a tour of duty, which took him to Germany. Hague Convention is asserted as an umbrella protection. And now, mind you, nobody raises the issue in that case. They just go ahead and adjudicate it under the Hague Convention. But if you're right, then how could that case have proceeded with any kind of jurisdiction? I'm not sure, to be honest with you. I'm trying to remember that, and I don't recollect exactly whether those facts are in what ñ well, obviously, I understand what the Court is saying. I don't know, Your Honor. I really don't know, to be perfectly honest with you. Okay. In your best explanation for why changing domicile, let's just assume she did, changing domicile matters is what? What's your best argument for that? My best argument is that she moved, she moves over and comes over to this country. Obviously, there was a lot of litigation going on, as I understand it. I was not privy to that. But there was a lot of litigation to that. My ñ again, maybe I'm kind of stuck here, but I see what is the real purpose of the convention. The convention is you are going to have two countries, and sometimes people cannot have the money to come over and litigate it. So they don't move to the country because then it defeats the purpose because the second part of it is in the convention is that the convention is trying to say where is the custody issue going to be litigated under what laws? If she had stayed over in Canada because of whatever reason, not moved, and she really never intended to come back to the United States, then she could have, that would have been different. Then I think the problem would have been that in all probability, and I'm not privy to that type of litigation that took place, maybe the Court would have said, well, yes. I think that you are not permanently moved to this country. You stayed over in Canada, and I'm going to apply on its face the real purpose of the convention. Yes, but you see, that's a choice of law issue, and I can understand all that. And maybe on the merits of the Hague Convention problem, Golden ends up in a pickle. Maybe or maybe not, I don't know. But my question is whether it goes to the Court's jurisdiction, authority, power to adjudicate the merits of the Hague Convention issue. There was, because of the fact that there was originally information via an affidavit from Respondent Remus before the other panel that she had permanently moved to this country, then that panel basically said, but we don't have a jurisdiction. We looked at it, and we don't have it because she's here now. So the whole thing is good, but because of the fact that the record is not developed, and then it was sent back to the jurisdiction. So thank you very much, unless you have any questions. Appreciate it. Mr. Lynch. I don't think I can do it justice in a minute and nine seconds, but I'll sure try. The case you were talking about, Your Honor, was Holder v. Holder. It is one of the best cases decided in the entire United States. It's a Ninth Circuit case. It's the only one of which I am aware in which a Ninth Circuit panel really grabbed all of the Hague Convention, got what it was about, and did what should have been done. The facts, as recited by Your Honor in asking the question, are absolutely accurate, and they have the inference that I believe that you drew. And I want you to know that after this decision, in my case, the one that's appealed here today, notwithstanding what the Ninth Circuit panel in the Holder case told the U.S. District Court judge to do up a Washington, they sent it back and he sent it to the magistrate, and they had a hearing and had it thrown out on the ground that his military time was up and he'd come to Washington and using the Godden v. Remus case as authority, his Hague petition was dead. I have checked right up until Monday of this week, and that was not appealed, apparently. The gentleman I know went back to Germany, volunteered as a civilian to get a job in Germany so he could try to turn that around, but he didn't have any more money. One other thing. You can overrule the earlier panel because it's not the law of the case. There's been no decision. That was not a decision. That was an announcement of a rule that was not pursuant to our application to any facts.  The time is up, Mr. Lynch. Thank you. We understand, unless we have any other questions. Any other questions or comments? Thank you, counsel, both of you, for your argument in this matter. The matter just argued will be submitted. I neglected to say the court will be in recess, which it is.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you.
judges: Rymer, Hawkins, Bybee